IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JACOB R. SHANNON,

                Plaintiff,                          OPINION AND ORDER

v.

                                                19-cv-983-wmc

STATE COLLECTION SERVICE, INC.,

                Defendant.

---

Plaintiff Jacob R. Shannon asserts claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, against defendant State Collection Service, Inc., a debt collector, based on twenty-eight calls placed by defendant to plaintiff's cell phone in an attempt to collect a debt incurred by Shannon for medical treatment. Without intending to diminish in any way plaintiff's own feeling of harassment caused by these calls, the court will now grant defendant's motion for summary judgment as a matter of law because the undisputed facts of record establishes that: (1) plaintiff gave express consent to those calls, foreclosing any TCPA claim; and (2) no reasonable jury could find objective harassment or the use of unfair or unconscionable means, foreclosing his FDCPA claims.[1]

UNDISPUTED FACTS[2]

On April 18, 2019, Shannon provided an electronic signature on a "General

---

[1] Also before the court is defendant's unopposed motion for leave to file separate proposed findings of fact (dkt. #23), which the court will grant.

[2] Unless otherwise noted, the court finds the following facts are undisputed when viewed in the

Consent for Treatment" form with medical provider "TriHealth." That form stated in material part:

> I understand that if at any time I provide a wireless telephone number at which I may be contacted, I consent to receive calls or text messages, including but not limited to communications regarding billings and payment for items and services, unless I notify TriHealth in writing. Such calls and text messages may be delivered via artificial or pre-recorded messages, automatic telephone dialing devices or other computer assisted technology, e-mail text messages, or by any other form of electronic communication from TriHealth, its affiliates, contractors, providers, or agents including collection agencies.

(McCormick Decl., Ex. A (dkt. #20-1) 2.) Shannon does not dispute that he signed the form, but contends that he was not provided an opportunity to read the terms of the document he was signing and did not intend to consent to receive autodialed phone calls or prerecorded messages. Even so, plaintiff acknowledged at his deposition that he did not ask to read the form's terms before signing it.

On June 3, 2019, Shannon also signed an "Involvement in Care" form with TriHealth, providing a cell phone number as his preferred contact number ("number"). (*Id.*, Ex. B (dkt. #20-2).) Again, Shannon does not dispute this, while adding that he filled out this form at his primary care physician's office for their use only. Still, as defendant points out, the paper form he completed states that Shannon's cell phone number may be used by "any TriHealth Affiliated Physician Practice." (McCormick Decl., Ex. A (dkt. #20-1).)

TriHealth placed numerous accounts owed by plaintiff Jacob R. Shannon for

---

light most favorable to plaintiff as the nonmoving party.

collection with defendant State Collection Service, Inc. ("SCS"). SCS first attempted to contact Shannon at the number he provided on September 23, 2019. Receiving no response, SCS proceeded to call that same number a total of twenty-eight times over the next roughly two months, with the last call placed on November 25, 2019. All of SCS's calls to the number were made with an interactive voice response ("IVR") system, which states upon answering, "If you are Jacob Shannon, please press 1. If not, please press 2." (Def.'s PFOFs (dkt. #23-1) ¶ 7.) The call record also reflects that SCS did not place more than one call per day to the number, and the call would hang up when sent to an answering machine without leaving a message. (McCormick Decl., Ex. C (dkt. #20-3).) All calls to the number by SCS were done using Ontario System's Contact Savvy 2.0 dialing solutions, which does not have the capacity to store or produce telephone numbers to be called, but rather uses a random or sequential number generator.

Shannon acknowledges that no employee ever spoke to him on any of SCS's IVR outbound calls, but represents that he answered one such call on November 4, 2019, directing the court to SCS's Compliance Manager Michael P. McCormick's declaration as support. In his declaration, McCormick averred that:

> On November 4, 2019, [Shannon's] account notes indicate "Live Answer Disconnected", which means that the call was answered, IVR played, and the call recipient said something, which was detected as a live voice rather than an answering machine, but the call recipient hung up without pressing 1 to be connected with a live representative of SCS.

(McCormick Decl. (dkt. #20) ¶ 12.)

On November 26, 2019, SCS did receive an *inbound* call from Shannon from the number during which he requested that the calls cease. SCS made no further calls to

3

Shannon's number after that date.

OPINION

I. **Consumer Protection Act Claims**

The TCPA prohibits making "any call" without the prior, express consent of the recipient "using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a paging service [or] cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii); *see also Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1045 (7th Cir. 2013). Defendant seeks summary judgment in its favor on plaintiff's TCPA claim on two bases: (1) SCS does not utilize an automatic telephone dialing system or ATDS, as that term was recently defined by the Seventh Circuit in *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 548, 564 (7th Cir. 2020); and (2) Shannon provided the required consent to SCS's calls.

In opposition, plaintiff concedes that defendant does not use an ATDS, but explains that the TCPA *also* prohibits use of an "artificial or prerecorded voice," 47 U.S.C. § 227(b)(1)(A)(iii), and that defendant used a prerecorded voice that stated, "If you are Jacob Shannon, please press 1. If not, please press 2." In its reply brief, defendant does not dispute that it used an artificial or prerecorded voice in its calls to plaintiff, nor could it in light of its proposed finding of fact on its acknowledged use of an IVR system.

As such, the only basis for entry of summary judgment on plaintiff's TCPA claim is defendant's contention that Shannon provided prior, express consent for the calls to his number. In a recent decision, the Seventh Circuit joined the Ninth Circuit in holding that

4

it is defendant's burden to prove consent under the TCPA. *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 964 (7th Cir. 2020) (citing *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018), *cert. denied* 139 S. Ct. 2743 (2019)). As such, to obtain summary judgment, defendant "must lay out the elements of the [defense], cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the [defense]." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015).

As set forth above, the undisputed record reflects that on April 18, 2019, plaintiff signed a consent for treatment form with TriHealth that provided in material part his "consent to receive calls or text messages, including but not limited to communications regarding billings and payment for items and services." (McCormick Decl., Ex. A (dkt. #20-1) 2.) Moreover, this consent included not just TriHealth but also "its affiliates, contracting, providers, or agents, including collection agencies." (*Id.*) The undisputed record also reflects that on June 3, 2019, Shannon signed an "Involvement in Care" form also with TriHealth, albeit at his primary care physician's office rather than at a hospital, and provided a cell phone number as his preferred contact number. (*Id.*, Ex. B (dkt. #20-2).)[3]

---

[3] Plaintiff argues in a cursory fashion that he provided his cell phone number to his primary care physician "an entity seemingly distinct from TriHealth" (Pl.'s Opp'n (dkt. #25) 11), but this argument is belied by the clear display on the form that it covered "any TriHealth Affiliated Physician Practice." (McCormick Decl., Ex. B (dkt. #20-2) 2.) Although not argued by plaintiff, even if the use of his number could be limited to physician practices, he consented to broader use in the original form.

Nevertheless, in response to these undisputed facts, plaintiff argues that summary judgment in defendant's favor is unwarranted because: (1) defendant has not met its burden of demonstrating that the cell phone number on the June 3, 2019, form was "provided during the transaction that resulted in the debt owed" (Pl.'s Opp'n (dkt. #25) 7 (quoting *In re Rules Implementing Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 564 (2008)); and (2) that plaintiff's purported consent in the April 18, 2019, form was procured by "fraud in the factum," directing the court to Ohio law for support (*id.* at 9).

As for plaintiff's *first* argument, "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided *during the transaction* that resulted in the debt owed." *In re Rules Implementing the Telephone Consumer Act of 1991*, 23 F.C.C.R. 559, 564 (2008) (emphasis added); *see also CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (explaining that under the Hobbs Act, district courts are bound by the FCC's TCPA orders). Because plaintiff provided a cell phone number approximately six weeks after he signed the consent for calls, including calls about billing, plaintiff appears to be arguing that the number was not provided "during the transaction that resulted in the debt owed." However, plaintiff cites *no* support for a requirement that the phone number must be provided *at the same time* as the consent, and the plain language of the rule provides no such requirement. Here, there is no dispute that plaintiff both signed the consent form *and* completed and signed the involvement in care form *for the purpose* of receiving medical care, which resulted in the medical bills that were the subject of defendant's efforts to collect. (*See* Ex. C (dkt. #20-

3) 2 (balances for treatment on 4/18/19 of $210.83, 5/15/19 of $22.98, and 6/3/19 of $18.75).) Moreover, in the original consent form, plaintiff acknowledged his understanding:

> that if *at any time* I provide a wireless telephone number at which I may be contacted, I consent to receive calls or text messages, including but not limited to communications regarding billings and payment for items and services, unless I notify TriHealth in writing.

(McCormick Decl., Ex. A (dkt. #20-1) 2 (emphasis added).) Accordingly, the court concludes that this first argument fails to raise an issue of fact as to plaintiff's prior express consent.

*Second*, plaintiff argues that the general consent form was procured by fraud in fact because he was not permitted to review the form before signing it. In support, plaintiff cites to Ohio law, contending that as a resident there for the last 19 years, "the 'General Consent for Treatment' form would have be[en] formed under Ohio law." (Pl.'s Opp'n (dkt. #25) 9 n.1.) Accepting, without deciding, that Ohio law would determine the validity of the general consent form, however, the undisputed facts do not support a finding of fraud in fact.

Under Ohio law, "[a] release is obtained by fraud in the factum where an intentional act or misrepresentation of one party precludes a meeting of the minds concerning the nature or character of the purported agreement." *Haller v. Borror Corp.*, 50 Ohio St. 3d 10, 13, 552 N.E.2d 207, 210 (1990). Essentially, plaintiff contends that he was not provided an opportunity to read the general consent form before signing it, and thus was intentionally misled as to its import, even though he also acknowledges having not *asked*

for an opportunity to read it before signing. However, plaintiff's testimony that TriHealth stated "his signature was necessary to treat him and that the document was related to consent for treatment" (Pl.'s Opp'n (dkt. #25) 8 (citing Pl.'s Dep. (dkt. #21) 36-37) falls far short of constituting an "intentional misrepresentation" under Ohio law. Indeed, "where there is mere misrepresentation by one party of the contents of a release, the agreement is not void for fraud in the factum when the releasor has an *opportunity* to read and understand the document before execution." *Haller*, 552 N.E.2d at 210 (emphasis added).

Here, plaintiff acknowledges that he did not ask to review the form, and plaintiff fails to put forth any evidence to support a finding that TriHealth prevented him (or would have prevented him, if he had asked) from reviewing the form before signing it. *See, e.g.*, *Deutsche Natl. Bank Tr. Co. v. Brown*, No. WD-09-035, 2009 WL 4727794, at *3 (Ohio Ct. App. Dec. 11, 2009) (rejecting argument that borrowers were prevented from reading arbitration rider because the agreement was buried within a stack of documents); *Nesco Sales & Rental v. Superior Elec. Co.*, No. 06AP-435, 2007 WL 611245, at *5 (Ohio Ct. App. Mar. 1, 2007) (finding no "fraud in the factum" where any "deception is attributed to negligence on the part of the maker," as demonstrated by example where signee "is of ordinary mind and is able to read and write and yet, in reliance upon the representation of another, he signs an instrument without reading it").

Having rejected plaintiff's two arguments for rebutting defendant's proof of prior,

express consent, summary judgment on plaintiff's TCPA in defendant's favor is warranted.[4]

**II. Fair Debt Collection Practices Act Claims**

Plaintiff has narrowed his FDCPA claims down to two at summary judgment: (A) a claim under 15 U.S.C. § 1692d(5), which prohibits "harassment or abuse"; and (B) a claim under 15 U.S.C. § 1692f, which prohibits "unfair or unconscionable means" to collect a debt. The court will take up the parties' arguments with respect to these two provisions in turn.

**A. 15 U.S.C. § 1692d**

First, 15 U.S.C. § 1692d provides in pertinent part:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

In his complaint, plaintiff specifically alleged that defendant "repeatedly called Plaintiff after being notified to stop." (Compl. (dkt. #1) ¶ 28.) As described above, however, the undisputed evidence at summary judgment establishes that plaintiff actually

---

[4] Plaintiff having provided no evidence that he felt coerced, was under medical duress, denied an opportunity to review the terms of the form, or that any of the terms themselves were unconscionable, albeit the form was provided electronically, the court has not been asked to reach, and does not decide, whether any of those circumstances might affect the adequacy of the consent. That said, the fact that most consumers are likely to take a chance by using the electronic signature pad without ever reading the form may merit further consideration by the legislative branch of government.

*notified* defendant to stop calling him in a call *he* initiated on November 26, 2019, and it immediately did so. While plaintiff asserts giving notice earlier during an automated call on November 4, the undisputed evidence also establishes that plaintiff simply made the request in response to a recorded voice message, without "pressing 1" as instructed to signal that he was Jacob Shannon, much less following the prompts to connect with a live representative or otherwise give defendant notice to stop calling.

This, then, leaves plaintiff's contention at summary judgment that the "volume and pattern of calls" by defendant, when coupled with "other instances of oppressive conduct," are sufficient to raise a triable issue of fact. (Pl.'s Opp'n (dkt. #25) 14 (citing *Light v. Seterus, Inc.*, 337 F. Supp. 3d 1210, 1215 (S.D. Fla. 2018) ("[U]nder the FDCPA, it is not necessary for individuals to request that debt collectors stop calling them before the calls can constitute harassment.").) As an initial matter, defendant acknowledges that whether a debt collector's conduct constitutes harassment is ordinarily a question of fact, but asserts "courts have recognized that in certain cases, this question can be resolved as a matter of law." (Def.'s Opening Br. (dkt. #18) (quoting *Clayton v. Asset Plus Companies, LP*, No. 4:13-CV-2862, 2014 WL 6388430, at *2 (S.D. Tex. Nov. 14, 2014)).) Defendant then cites other federal district court decisions that the plaintiff had failed to put forth sufficient evidence to support a finding of harassment based on call volumes that exceed the 28 calls made by SCS in this case, over what SCS characterizes as a three-month period of time. (*See* Def.'s Opening Br. (dkt. #18) 12 (citing cases granting summary judgment in a defendant's favor where: 55 calls were made over a three and a half-month period; six calls made over two weeks; 149 calls made over two-month period).) Finally, defendant

contends that in order to show an "intent to annoy, abuse or harass," courts also look for "other objectionable conduct" -- "calling immediately after hanging up, calling multiple times in a single day, calling places of employment, family, or friends, calling at odd hours, or calling after being asked to stop," *Waite v. Fin. Recovery Servs., Inc.*, No. 8:09-CV-23446, 2010 WL 5209350, at *3 (M.D. Fla. Dec. 16, 2010) -- which defendant argues is absent here as well.

In response, plaintiff begins by pointing out correctly on this record, that SCS's calls occurred over a roughly two-month period of time, not three months as defendant characterizes. As such, defendant placed a call roughly every other day, rather than every third day. However, this correction does not serve as a particularly persuasive basis for distinguishing the call volumes in cases cited by defendant. Still, in suggesting a "volume minimum" for a plaintiff to proceed with an FDCPA claim, both parties largely focus on cases outside this district, and, indeed, outside the Seventh Circuit. Moreover, in contrast to courts in other circuits who have been willing to grant summary judgment to a defendant debt collector based on call volumes, this court has previously observed that district courts within the Seventh Circuit "have generally declined to dismiss § 1692d(5) claims as a matter of law, even when they were based on smaller call volumes." *Rigby v. CrossCheck Servs., LLC*, No. 19-CV-36-JDP, 2020 WL 1492893, at *5 (W.D. Wis. Mar. 27, 2020) (citing *Swearingen v. Portfolio Recovery Assocs., LLC*, 892 F. Supp. 2d 987, 992-93 (N.D. Ill. 2012) (denying summary judgment to debt collector who placed between 22 and 32 calls over the course of ten weeks); *see also Majeski v. I.C. Sys., Inc.*, No. 08 CV 5583, 2010 WL 145861, at *2-4 (N.D. Ill. Jan 8, 2010) (denying summary judgment to debt collector who

11

placed 67 calls to plaintiff over the course of six months)).

Still, in *Rigby* and the other decisions cited in *Rigby*, the evidence at least supported a finding of harassing call patterns and other objectionable conduct. In *Rigby*, the court not only relied on the call volume (76 calls, "sometimes multiple times in one day," over the course of 4½ months), but also on evidence that: the plaintiff had asked the defendant to pause or stop the calls on three occasions and the defendant failed to do so; the plaintiff had repeatedly spoken with the defendant, thus undermining "any belief that [Rigby] was not answering the calls because [he] missed them inadvertently or that [he] would have wanted to be called at a different time"; the defendant contacted the plaintiff's mother *after* having already made contact with the plaintiff; and the plaintiff averred that defendant threatened him with litigation and criminal charges. 2020 WL 1492893, at *2, 6. Similarly, in *Swearingen*, the court relied on evidence that: the defendant continued to call one of the plaintiff's cell phone numbers after he informed them that his wife, the other plaintiff, could not be reached at this number; the plaintiff asked the debt collector provide him with a letter or at least an address that he could write to request that the calls stop; and the debt collector's calls were accompanied by an annoying buzzing sound. 892 F. Supp. 2d at 992-93. Likewise, in *Majeski*, the court not only relied on the call volume, but pointed to the record demonstrating that the defendant at times called up to six times per day and left multiple voicemail messages, at times only a few hours apart. 2010 WL 145861, at *3.

In fairness, plaintiff contends that there is evidence of other objectionable behavior in this case, although pointing to other, independent violations of the FDCPA, claims

which were neither raised by plaintiff until summary judgment, nor support a finding of an intent to harass.  (Pl.'s Opp'n (dkt. #25) 15 (citing *McGowan v. Credit Mgmt. LP*, No. 2:14-CV-00759-APG, 2015 WL 5682736, at *5 (D. Nev. Sept. 24, 2015) (explaining that while plaintiff did not assert an FDCPA claim based on defendant's failure to identify itself, the court could nonetheless consider such evidence in support of plaintiff's claim under § 1692d)).)  Specifically, plaintiff argues that defendant, in its use of an IVR system, violated § 1692d(6) and § 1692e(11), which require a debt collector to disclose its identify and identify itself as a debt collector when communicating with a consumer.  (Pl.'s Opp'n (dkt. #25) 15.)

Understandably enough, defendant objects to plaintiff's attempt to assert FDCPA violations not alleged in his complaint, but also argues that any finding that the recorded message constitutes a "communication" under the FDCPA, which triggers the disclosure requirement, is foreclosed by the Seventh Circuit's recent decision in *Lavallee v. Med-1 Solutions*, 932 F.3d 1049 (7th Cir. 2019).  While *Lavallee* specifically addressed whether an email constituted a communication, the court's reasoning in rejecting this argument would certainly appear to foreclose finding defendant's generic, automated calls a "communication" under the FDCPA given their lack of any reference to the existence of a debt in the recorded message to Shannon.  *Id.* at 1054.  If anything, defendant would only have been obligated to disclose itself after plaintiff pressed "1," identified himself and was connected with a live representative of defendant, who presumably would have been the first to reference his debt.  Regardless, since it is undisputed that none of this happened, the *only* evidence plaintiff has to support a finding of harassment under § 1692d at

summary judgment is an automated call placed to the number plaintiff previously consented could be used to reach him regarding his medical debt, including by a debt collector, approximately every other day for a two-month period of time, and never more than once per day, with no messages left, the opportunity to stop the calls at any time by identifying himself, Shannon picking up the phone call on only one occasion, and the calls immediately ceasing the first time Shannon actually notified defendant that he wanted the calls to stop. Consistent with similar cases, this evidence fails to support a finding of harassment under § 1692d, including a finding of an intent to harass. Accordingly, the court will grant judgment to defendant on this claim as well.

### B. 15 U.S.C. § 1692f

Plaintiff's final claim sounds under 15 U.S.C. § 1692f, which states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," and lists eight categories of conduct that fall within the scope of this provision. Defendant seeks summary judgment on this claim because plaintiff "fails to identify misconduct beyond that which [] plaintiff asserts in [his] other FDCPA claims." (Def.'s Opening Br. (dkt. #18) 16.) While the court acknowledges that there is some support for defendant's position, *see Vanhuss v. Kohn Law Firm S.C.*, 127 F. Supp. 3d 980, 989-90 (W.D. Wis. 2015), plaintiff counters with decisions in which the Seventh Circuit has reversed dismissal of claims under § 1692f, allowing the claim to go forward based on the same or similar conduct underlying other FDCPA violations. *E.g., Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565–66 (7th Cir. 2004). In this case, however, whether a claim under § 1692f could proceed to trial where another, more specific FDCPA claim covers the same

14

conduct is a moot point, since plaintiff's argument in support of his § 1692f claim is the very same made in support of his § 1692d claim. Having concluded that plaintiff has failed to put forth sufficient evidence from which a reasonable jury could find defendant's conduct constituted harassment, the court similarly concludes that plaintiff has failed to raise a genuine issue of material fact that defendant used unfair or unconscionable means in its attempt to collect plaintiff's debt. For all the same reasons then, the court will also grant summary judgment to defendant on this FDCPA claim.

## ORDER

IT IS ORDERED that:

1) Defendant State Collection Service, Inc.'s unopposed motion for leave to file separate proposed findings of fact (dkt. #23) is GRANTED.

2) Defendant's motion for summary judgment (dkt. #16) is GRANTED.

3) The clerk's office is directed to enter judgment in defendant's favor and close this case.

Entered this 10th day of February, 2021.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge